Simon, J.
delivered the opinion of the court.
This case originated in a rule taken by the plaintiff on the Bank of Louisiana and other persons, to show cause why certain mortgages existing in their favor on the records of the recorder of mortgages of the parish of East Baton Rouge, on certain property formerly owned by E. A. Browder, deceased, since his death sold by virtue of an order of the court of probates of said parish, for the purpose of paying the debts of the succession, and purchased by the plaintiff, should not be erased from the record books of the said recorder of mortgages. The grounds alleged are that all the creditors, including the Bank of Louisiana, consented to the probate sale, and to exercise their claims upon the proceeds of the same; that several tableaux of distribution of said proceeds were filed and all the debts of the succession were fully paid off and discharged ; and that by the effect of the probate sale and of the consent of the mortgage creditors, all the mortgages on the plantation purchased at the said sale by the plaintiff were released and extinguished.
The Bank of Louisiana first excepted to the jurisdiction of the probate court, pleaded the general issue, and averred that a certain mortgage [380] still existed in their favor for a balance in principal and interest yet unpaid by the estate of Browder, and amounting to $4,216, with interest. They prayed that the plaintiff’s petition be dismissed.
The declinatory exceotion was overruled by the probate judge, who, after *232 an investigation of all the matters in controversy, gave judgment on the merits in favor of the plaintiff, and ordered all inscriptions of mortgages existing on the property to him adjudicated, and among others, that of the Bank of Louisiana, to he erased iron the records of the recorder of mortgages, &c. From this judgment the hank appealed.
The first question brought to our notice is that relative to the jurisdiction of the court of probates; and it is contended on the part of the appellants that said court is without jurisdiction ratione material, and cannot in any manner grant any order or render any judgment affecting or changing the rights acquired by the hank under the mortgage. We think differently: The application made by the plaintiff, may be considered as having for its object the perfection of a title to him transferred under the authority of the court of probates ; the sale of the property made by virtue of an order of said court for the payment of the debts of the succession, was exclusively within its jurisdiction, and the power to sell must necessarily be understood to include also the power to give a clear title to the purchaser. It is true that courts of probate are courts of limited jurisdiction, but under the article 1037 of the Oode of Practice, they are authorized to exercise all such powers as may he neces sary to enforce their jurisdiction, and this, in our opinion, clearly enables them to take cognizance of any matter arising from the consequences of the exercise of such jm'isdiction. So, in the case of Towles’ administratrix v. Weeks et al., 7 La. Rep. 312, the probate court, on a rule to show cause, required and ordered the purchasers to comply with the terms and conditions of the sale of the property of the estate, although said court could not come to this conclusion [381] without inquiring into the validity of the title transferred to the said purchasers. So, in the case of The State v. Judge Leblanc, 5 La. Rep. 329, and in that of Zacharie’s administrator v. Prieur et al., 9 La. Rep. 199, the power of the judge of probates to grant an order to erase and cancel certain mortgages existing on property which the applicant had purchased at a sale made under the authority of his court, was not questioned, for although the point was not raised or suggested, if the want of jurisdiction had been absolute, this court would have noticed it ex officio. The plea to the jurisdiction was therefore correctly overruled.
The record contains three hills of exceptions:
1. One taken to the opinion of the judge a quo, permitting the plaintiff to show by the testimony of the parish judge that the bank had consented to the sale of the property mortgaged on the terms fixed 'by the administrator under the homologation of the court.
2. Another to the deposition of the cashier of the bank, introduced for the purpose of showing the circumstances under which a certain sum of money had been received by the hank, on account of the mortgage claim.
3. To the production in evidence of certain proceedings had before the probate court in relation to the estate of Browder, and particularly of the successive tableaux of distribution filed by the administrator and of an execution issued by the bank under the last tableau.
I. The evidence of the parish judge was certainly good, so far as it goes to establish facts tending to show that the bank assented to the sale, and to look *233 to the proceeds of the property for their payment although such facts may not be conclusive proof of the consent.
II. The cashier, acting as the agent of the bank in the collection of the sums of money due to the institution, is a competent witness to show the facts and circumstances attending the payment of any such sums, and to establish how, by whom and for what purpose such payment may have been made.
III. This objection goes rather to the effect than to the admissibility [382] of the evidence; for, if the bank was no party to the proceedings, they were res inter alios aata, and could not produce any effect against them.
On the merits, the facts as established by the evidence, are mainly these: In March, 1831, John Linton, who was a creditor of the estate of Browder for a large amount, claimed the administration thereof. A short time after-wards, he was appointed administrator.' In October following he convened a meeting of the creditors of the succession, which was held on the 23d of November ; the Bank of Louisiana was duly notified, but did not attend. On the 24th of November, the proceedings of the creditors were homologated, and the sale of the property was ordered to take place according to the terms and conditions fixed upon by the meeting of creditors. The sale, however, was subsequently postponed until the month of February, 1832; and then, was again put off indefinitely. In the mean time, on the 19th of January, 1832, the board of directors of the Bank of Louisiana passed a resolution at the request of John Linton as administrator, that a suit be instituted on the bond due them by the estate, with the understanding that the purchaser of the mortgaged property should assume the payment of said bond, in three equal instalments at one, two and three years; this had already been agreed upon and consented to in writing by the counsel of the bank. On the 12th of April ensuing, application was made by the administrator to the board of directors, to arrest the legal proceedings, which was assented to; and on the 18th of April, 1833, it was resolved, at the request of John Linton, thathebe authorized to proceed in the sale of the property mortgaged, on his consenting to protect the bank against any loss which might arise in consequence of said sale. From this period until nearly one year after the sale of the property, repeated communications took place between the bank and John Linton, who had been twice renewed as administrator; several resolutions were passed [383] to indulge him, and to accept his individual responsibility, and various sums had been by him paid to the bank on account, of the discount or interest; when on the 13th of October, 1834, after the death of John Linton, IV. E. Thompson was appointed administrator. On the 12th of May, 1836, Thompson filed a tableau of distribution of the funds of the estate proceeding from the sale of the property; in which, after stating the different payments made to the bank as interests on bonds, &c., they are carried as mortgage creditors on the plantation and slaves for the sum of $10,000, being the amount of the two bonds. This tableau was duly homologated on the 20th of June following, and became the judgment of the court. On the 27th of February, 1888, a second tableau was filed by Thompson, in which the bank is not mentioned ; in this, it is represented that every debt is fully paid and that a balance of *234 $12,448 remains for the heirs. This tableau was also duly homologated. On the 10th of September following, the board of directors passed a resolution, “ authorizing the cashier to demand from and inform W. E. Thompson, administrator of the estate of Browder, that unless the balance due to the bank by that estate, with interest, be immediately paid or arranged for, the bank will proceed and the cashier is authorized to home proceedings instituted against him as administrator.'1' On the 17th of November an execution was issued, at the request of the cashier by order of the board, against Thompson for $10,000, under the decree of the probate court homologating the tableau, and on the 26th, the cashier gave the administrator the following receipt:
“ Banh of Louisiana;, 26í7¿ November, 1838. Received foom W. E. Thompson., curator of the estate of F. A. Browder, ten thousand dolíaos principal., being judgment recovered, homologating the tableau filed of said estate by said W. E. Thompson on the 12th of May, 1836, and for which execution is now [384] in the hands of the sheriff of this pa/rish issued from the probate court of the parish of East Baton Rouge. Signed W. E. Leverich, Cashier."
The return of the sheriff shows that the execution was stayed by order of the bank, and subsequently returned.
According to the 31st, 34th and 35th sections of the charter of the Bank of Louisiana, 1 Moreau’s Digest, 55, it cannot be doubted that the right of this corporation of causing the property mortgaged in its favor, to be seized and sold in whatever hands it may he, notwithstanding any sale or change of title by descent or otherwise, can in no manner be affected or impaired by the death or insolvency of their debtors, and the rule that after the death of the mortgagor, a sale of his property by order of the court of probates has the effect of raising the mortgage and of attaching it to the proceeds in the hands of the administrator, does not apply. It follows therefore that, where such property as is subject to the mortgage-of the Bank of Louisiana, is sold by a curator or administrator of a succession, under an order of the probate court or in any other manner, the bank is not bound by the proceedings of the estate and that the purchaser does not acquire it free from encumbrance, unless the board of directors has consented to the sale or to the terms thereof, or has done such other acts as to show that the corporation has given its assent to being satisfied out of the proceeds thereof. "Was the evidence in this case confined to the resolutions which were passed by the board of directors, at the request of the administrator, for the purpose of extending to him such indulgence as would give him the means of discharging the debt due to the bank out of any other funds of the estate hut those proceeding from the sale, we should not be ready to infer from this circumstance alone that the bank has given such a consent to the sale as to deprive them of their hypothecary action against the third possessor of the property according to the charter; although the succession was administered as an insolvent estate, [385] and although the bank recognizing John Linton as administrator, had treated with him in that character on various occasions. But the previous facts and circumstances connected with the resolution passed on the 10th September, 1838, in which the bank declares their readiness and determination to exercise their rights against the ad/ministo'ator, and to obtain payment *235 from, Mm, out' of the funds necessarily proceeding from the sale of the mortgaged property; with the exeeutionis sued against him by virtue and in consequence of the tableau of distribution homologated by the court; and with the payment made by said administrator in compliance with the writ of execution, show conclusively that the Bank of Louisiana had, from the origin of Linton’s administration, made themselves parties to the probate proceedings, had continued to do so, and had voluntarily relinquished any exemption they might have claimed from the general operation of the laws regulating probate sales. Indeed, it appears to us clear that they never intended that tho property should be sold subject to their mortgage, but that on the contrary they always had in contemplation that they were to seek and obtain tho satisfaction of their mortgage claim out of the proceeds of the sale, and having received a large portion of said proceeds, this may be fairly considered at least as a ratification of the sale; and, in our opinion the bank cannot now look to the property purchased by the plaintiff for the payment of any balance which may remain due; their remedy is against the administrator or against the heirs who, according to the last tableau, may perhaps have received from him the remainder of the funds of the succession.
It is therefore ordered, adjudged and decreed, that the judgment of the district court be affirmed, with costs.